## HOLLISTON.

The validity of an election is not affected, by a neglect of the collector, to make a return to the selectmen, of the names of persons paying taxes, agreeably to the requisition of the statutes of 1822, c, 104, § 2, and 1833, c. 102, § 1, (Rev. Stat. c. 3, §§ 3, 4.)

Nor by a neglect of the selectmen to hold a meeting, one hour previous to the town-meeting, for the revision of the list of voters, as required by the former statute.

THE election of Ebenezer H. Currier and Elias Bullard, members returned from the town of Holliston, was controverted by Martin Cutler and others,[1] on the several grounds, stated in the following report of the committee on elections[2]:

"The petition alleges: 1. That the collector of said town neglected to comply with the law of March, 1833, requiring a return to the selectmen of persons paying taxes, to the end that a correct list of voters may be made.

The committee find that no such return was made by the collector, and are of opinion, that this neglect of the collector is insufficient to avoid the election.

The petition alleges: 2. That the selectmen neglected to hold a meeting one hour previous to the town meeting, for the revision of the list of voters, as required by law.

The committee find that the selectmen held a meeting for this purpose, a short time, probably half an hour, before the town meeting; and that on opening the meeting, proclamation was made for all legal voters, whose names were not already on the list, to come forward, that they might be placed there.

The committee are of opinion, that no irregularity upon this allegation was proved, sufficient to affect the election. The petition also alleges generally, that illegal voters voted.

The committee find that one illegal voter, namely: William Andrews, voted for the sitting member, Elias Bullard, and that said Andrews had resided in Holliston only since the 18th of October last.

The petition also alleges, that two votes bearing the name

[1] 55 J. H. 32.  [2] Same, 319.

of Eben. H. Currier, which were not entirely severed when put into the ballot box, were afterwards torn asunder by the sitting member, Elias Bullard, who is a selectman of said town of Holliston, in order that they might be counted separately.

The committee find that these votes, if attached to each other as alleged, could only have been connected at one end by about one eighth of an inch of uncut paper, they having been cut almost asunder in the usual manner, preparatory for their distribution. One witness, Benjamin Hoffman, swore that he saw the sitting member, Elias Bullard, tear those votes apart; that he heard the noise that is made by tearing paper, and said at the time to said Bullard, ' I think your votes stick together.'

It was proved in the defence, by a witness, John P. Jones, who swore that he heard the remark of Hoffman, aforesaid, and ' at that time his eyes were on said Bullard's hands;' that he did not see him tear the votes, as described by Hoffman; that the votes did not seem to be attached at the end, but seemed to adhere across each other; that if they had been so attached and torn as described by Hoffman, he should have seen it done.

This testimony was corroborated by another witness. Both these witnesses had as good opportunity to observe said Bullard's movements as Hoffman had.

At the time when Hoffman swears he heard the noise occasioned by tearing these votes asunder, there probably were from one hundred to one hundred and fifty men in the town hall, and many of them in conversation, as is usual while votes are being counted. There was also a press of active persons near the town officers, waiting for votes, for re-distribution to their respective friends, in the event of no choice.

The committee cannot conceive that the tearing of one eighth of an inch of paper, under such circumstances, could have been audible; and are of opinion that the charge is unsustained by the petitioners.

The testimony upon this charge has been given somewhat at length, from a sense of what is justly due to the reputation of the

sitting member, Bullard, who, in the opinion of the committee, should be fully acquitted of any improper or dishonorable conduct on this occasion.

On the last allegation, namely, 'that the sitting members were not elected by a majority of the legal votes polled at said election,' the committee find, that, in reference to the sitting member, Eben. H. Currier, this allegation is not proved, and report that said Currier is entitled to his seat.

Upon this last allegation, in reference to the sitting member, Elias Bullard, the committee find, that the town clerk made up his report from the return of the town officers, who sorted and counted the votes, and that his report stood as follows:— Bullard, 102; Littlefield, 83; scattering, 12: and that there- upon said Bullard was declared to be duly elected.

The committee also find, that after the meeting was dis- solved, it was ascertained, that at least nine scattering votes which had been assorted by the town clerk, and pushed by him toward the centre of the table, were accidentally omitted in the report aforesaid, and that said report should have stood thus: Whole number of votes, 206; necessary for a choice, 104; Bullard had 102; Littlefield, 83; scattering, (12 count- ed and 9 omitted,) 21. Deducting the illegal vote of Wil- liam Andrews, which was given for Bullard, it appears that there was a deficiency of three votes for the choice of Bullard.

The committee also find, that the error was accidental, and that the town officers are not obnoxious to the charge of an intentional dereliction from duty.

The committee accordingly report, that the supposed elec- tion of Elias Bullard is void, and that his seat ought to be de- clared vacated."

On the fourteenth of March, this report was discharged from the orders of the day, and taken up for consideration. It was accepted so far as relates to the right of Ebenezer H. Currier to his seat, and, so far as it relates to the right of Elias Bullard, and declaring that he was not duly elected, was re- jected. On motion of Mr. Metcalf, of Dedham, it was then

voted, that the said Elias Bullard is duly elected a member of the house, and entitled to his seat therein.[1]

[The only part of the report in this case, which particularly affected the right of Mr. Bullard to his seat, was the statement of the committee, that there was an omission, on the part of the town officers, to include, in the whole number of votes given in, nine scattering votes, which, if counted, would have changed the majority. In the debate upon the question of the acceptance of the report, the evidence, upon which the committee founded their conclusion, that these nine votes were omitted, was very fully and minutely detailed by the chairman ; but, in the opinion of a great majority of the members, the facts disclosed, though they rendered it probable, that such was the case, were not sufficient to make it reasonably certain ; and, upon that ground, the report, as to the seat of Mr. Bullard, was rejected.]